UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SCOTT D. JACKSON, State of Connecticut,
Commissioner of Labor,
    Plaintiff,

v.

FIRST NIAGARA BANK, N.A.,
    Defendant.

No. 16-cv-1479 (VAB)

**ORDER ON MOTION FOR REMAND**

Scott D. Jackson, Commissioner of the State of Connecticut Department of Labor ("Plaintiff"), brought this suit under his statutory authority under Conn. Gen. Stat. § 31-72 to collect unpaid wages on behalf of Brian L. Pelletier, from his former employee First Niagara Bank, N.A. ("First Niagara" or "Defendant"), in the Connecticut Superior Court. ECF No. 1-1.

First Niagara then removed the case to this Court. ECF No. 1. Plaintiff has moved to remand this case to the Connecticut Superior Court. ECF No. 19. At oral argument on this motion, the Court granted leave for the parties to provide the Court with supplemental briefing. ECF No. 29.

For the reasons that follow, this motion is **DENIED**.

**I.**     **FACTUAL BACKGROUND**

Plaintiff, the State of Connecticut Commissioner of Labor, brings this case on behalf of Mr. Pelletier, a citizen of the State of Connecticut. Removal Statement ¶ 1, ECF No. 2. Plaintiff filed this action on August 4, 2016, in the Connecticut Superior Court for the Judicial District of Hartford, *see generally* Compl., ECF No. 1-1, alleging that First Niagara was an employer under

1

Conn Gen. Stat. § 31-72a(1). *Id.* ¶ 2. First Niagara is based in Buffalo, New York, and is a subsidiary of KeyBank, based in Cleveland, Ohio. *Id.* ¶ 4.

First Niagara allegedly employed Mr. Pelletier from February 2009 through October 17, 2013. Compl. ¶ 3. On December 2, 2013, Mr. Pelletier allegedly filed a claim with Plaintiff, seeking assistance in obtaining unpaid wages from First Niagara. *Id.* ¶ 4. Plaintiff allegedly investigated the claim and determined that First Niagara owes Mr. Pelletier $43,934 in unpaid wages, consisting of $6,300 in "true up" commissions based on annual production, $12,634 in commissions on mortgage loans for loans that closed more than thirty days after his October 17, 2013, termination, and a $25,000 bonus based on Mr. Pelletier's 2012 performance. *Id.* ¶ 5. The $43,934 in unpaid wages allegedly due to Mr. Pelletier remains due and outstanding. Compl. ¶ 8. Under Conn. Gen. Stat. §31-72, Plaintiff seeks to collect double damages, for a total of $87,868, in addition to reasonable attorney's fees, costs and interest. *Id.* § 9.

In support of its motion to remand, Plaintiff has provided a stipulation, signed by the Attorney General for the State of Connecticut, George Jepsen, Assistant Attorney General Philip M. Schulz, Plaintiff's counsel, Assistant Attorney General, Richard T. Sponzo, and Resa Spaziani, the Director of the Wage and Workplace Standards Division of the Connecticut Department of Labor. *See generally* Stipulation, ECF No. 19-1. The Stipulation provides that the State of Connecticut Commissioner of Labor, "will not seek more than $75,000.00 in his claims against" First Niagara. *Id.* at 1. Plaintiff has also provided a stipulation signed by Mr. Pelletier, where he agreed not to seek more than $75,000.00 from First Niagara. *See* Pl.'s Reply Ex. A at 12, ECF No. 23.

## II. STANDARD OF REVIEW

District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Defendant has the burden of demonstrating that removal of a case to federal court is proper. *California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004); *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000). The Court must "resolve any doubts against removability," out of "respect for the limited jurisdiction of the federal courts and the rights of states." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks omitted).

## III. DISCUSSION

Plaintiff argues that the Court should remand this case for three reasons: (1) suits involving a state as a real party in interest cannot be removed, because a state is not a citizen of any state, precluding diversity jurisdiction, Pl.'s Br. at 9–10, ECF No. 19-1; (2) the amount in controversy does not exceed $75,000, *id.* at 2–6; and (3) the Court should abstain from deciding Plaintiff's claims because they raise novel issues of state law. *Id.* at 6–9; Pl.'s Supp. Br. Add. at 2–4, ECF No. 33. First Niagara disagrees and argues that the Court has jurisdiction over the matter. *See generally* Def.'s Br., ECF No. 22; Def.'s Supp. Br. at 4–7, ECF No. 31.

For the reasons that follow, the Court agrees with Defendant and denies the motion to remand.

A. **Diversity of Citizenship**

Plaintiff argues that this suit is being brought by the State of Connecticut as the party in interest, in its capacity as a sovereign, which precludes diversity jurisdiction and requires remand. Pl.'s Br. at 9–10; Pl.'s Supp. Br. Add. At 1–2. If that is the case, then "[t]here is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973). Based on the applicable law, however, the Court disagrees with Plaintiff's characterization of its interest and finds that remand is not warranted.

In determining whether the State of Connecticut is the real party in interest, the Court must look at the "essential nature and effect of the proceeding, as it appears from the entire record." *In re State of New York*, 256 U.S. 490, 500 (1921). Under Conn. Gen. Stat. § 31-72, "[w]hen any employer fails to pay an employee," "[t]he Labor Commissioner may collect the full amount of any such unpaid wages" and "may bring any legal action necessary to recover twice the full amount of unpaid wages." "The commissioner shall distribute any wages . . . collected pursuant to this section to the appropriate person." *Id.* An "employee" may also "recover, in a civil action," the wages an employer owes under this statute. *Id.*

Under Conn. Gen. Stat. § 31-72, an employee may assign their claim to the Labor Commissioner by using the state's complaint form, creating an "assignment for collection," but the employee "retain[s] equitable ownership of those claims, and may bring" their own "action to collect the wages owed them." *Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 229 (2003). The employee therefore "retains express authority to object to, or disapprove, any proposed settlement," creating "what is essentially an agency relationship" between the employee and the Commissioner. *Id.* The Commissioner's "policy is to discontinue its collection efforts upon the filing of a private action by the employee." *Id.*

As a result, under Connecticut law, while the State of Connecticut, through the Commissioner of Labor, has a significant interest in the litigation and enforcing Connecticut's labor laws, as well as the legal right to bring an action—which it exercised here after Mr. Pelletier completed a complaint form that creates an "assignment for collection" —Mr. Pelletier "retain[s] equitable ownership of [his] claims," and "retains express authority to object to, or disapprove, any proposed settlement." *Id.* at 229. Mr. Pelletier, therefore, is the real party in interest; the State of Connecticut is not.

The decision cited by Plaintiff, *Comm'r of Labor of N. Carolina v. Dillard's, Inc.*, 83 F. Supp. 2d 622, 628–31 (M.D.N.C. 2000), does not require a contrary result. There, the court found that the State of North Carolina was the real party in interest in a case brought by the North Carolina Commissioner of Labor, and remanded the case for lack of diversity jurisdiction. *Id.* at 631. The court recognized, however, that employees in North Carolina did "not have a legal right to enforce the claim without first receiving a right-to-sue letter from the Commissioner of Labor," and only a "conditional right" to bring an action. *Id.* at 630. In circumstances where the Commissioner did not issue a right to sue letter, "only the Commissioner of Labor has the enforceable right to bring the lawsuit in this case," and thus, "only the Commissioner is the real party in interest in this case." *Id.* In other words, North Carolina's statutory scheme is materially different from Connecticut's, and that material difference is why North Carolina would be the real party in interest, had this lawsuit been brought under North Carolina law, rather than under Connecticut's laws.

The Commissioner of Labor also contends that his power to bring "any legal action necessary" to effectuate Conn. Gen. Stat. § 31-72 is dispositive of his status as sovereign. Pl.'s Supp. Br. Add. at 2–6. The Court disagrees. Because the Court's analysis must turn on the

"essential nature and effect of the proceeding, as it appears from the entire record," the fact that the Commissioner of Labor may be the real party in interest in one type of proceeding under the statute does not mean that Commissioner of Labor is the real party in interest in all proceedings under the statute. *See In re State of New York*, 256 U.S. at 500 ("[I]t is now established that the question is to be determined not by the mere names of the titular parties . . . ."). In other words, the real-party-in-interest inquiry is fact specific.

As discussed above, Mr. Pelletier completed a complaint form that creates an "assignment for collection" and, therefore, he is the real party in interest. *See Schoonmaker*, 265 Conn. at 229. The State of Connecticut is not the real party in interest; rather, the Commissioner of Labor brings this action on Mr. Pelletier's behalf. There is diversity of citizenship between Plaintiff, the Commissioner of Labor, and Defendant, First Niagara, and this Court has diversity jurisdiction over this case. Remand is not warranted based on an alleged lack of diversity of citizenship.

### B.     Amount in Controversy

Because the representatives of the Commissioner of Labor and Mr. Pelletier have now stipulated that they will seek less than $75,000 in damages in this case, Plaintiff argues that this case does not meet the amount in controversy requirement for diversity jurisdiction. Pl.'s Br. at 2–6. The Complaint, however, states that the Plaintiff is seeking a total of $87,868, representing "double damages," Compl. ¶¶ 8–9, and First Niagara removed this case based on the allegations contained in the Complaint. As a result, the amount in controversy requirement for diversity jurisdiction has been satisfied.

The Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Ocean Ships, Inc. v. Stiles*, 315

F.3d 111, 116 (2d Cir. 2002). Furthermore, "the existence of federal subject matter jurisdiction over an action removed from state court to federal court is normally to be determined as of the time of removal." *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009).

"[F]ederal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement," so long as the stipulation is "legally binding on all plaintiffs." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595–96 (2013). The Second Circuit, however, has also made "clear that a plaintiff cannot seek to deprive a federal court of jurisdiction by reducing her demand to $75,000.00 or less once the jurisdictional threshold has been satisfied." *Yong Qin Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010) (discussing case where plaintiff or appellant stipulated to less than $75,000 in damages only after the case was appealed to the Second Circuit).[1]

To the extent that the "amount in controversy was satisfied at the time of removal," and with "nothing in the record" suggesting that a plaintiff's representations of the amount in controversy were "made in bad faith or that the true value of the claim was to a legal certainty less than the jurisdiction threshold," the plaintiff cannot subsequently deprive the federal courts of jurisdiction "it properly possessed" at the time of removal. *Luo*, 625 F.3d at 776 (internal quotation marks omitted). Because Plaintiff's Complaint stated an amount in controversy above $75,000 at the time the case was removed, the jurisdictional threshold here has been satisfied.

---

[1] The Commissioner of Labor's suggestion that *Knowles* controls in this matter, Pl.'s Supp. Br. at 1, and overrules *Luo sub silentio*, *id.* at 3–4, is, simply put, mistaken. In *Knowles*, plaintiff attached the stipulation seeking to limit the scope of the monetary relief sought to the complaint. 568 U.S. at 591. As a result, the stipulation existed at the time of removal. Here, the Commissioner of Labor has attached a stipulation limiting the scope of monetary relief sought, after the case already had been removed. The Supreme Court's decision in *Knowles* thus does not affect this Court's application of *Luo*. *See* 625 F.3d at 776 ("At the time of removal . . . the amount in controversy exceeded $75,000.").

While "the courts may look to documents outside the pleadings to other evidence in the record to determine the amount in controversy" when there is a dispute as to the amount in controversy and "the pleadings are inconclusive," *Luo*, 625 F.3d at 775, the Complaint here is not inconclusive and the Court will not presume bad faith about the amount stated at that time.

Cases remanded in this District following a plaintiff's stipulation that he or she will seek less than the amount in controversy requirement do not suggest anything different. Indeed, in those cases, the initial complaint did not clarify whether the plaintiff sought more than that amount. *See Luce v. Kohl's Dep't Stores, Inc.*, 23 F. Supp. 3d 82, 85 (D. Conn. 2014) ("This approach does not run afoul of the rule that a plaintiff may not reduce a monetary demand to defeat federal diversity jurisdiction that otherwise properly existed. Rather, the stipulation does no more than evidentially clarify an amount in controversy that is otherwise ambiguous."); *Hayes v. Pfizer, Inc.*, No. 3:15-CV-1854 (MPS), 2016 WL 1363623, at *2 (D. Conn. Apr. 6, 2016) ("Plaintiff's stipulation suffices to refute any preponderance showing that her claim amounts to more than $75,000 in damages.")

Plaintiff's citation to *Devit v. Cont'l Gen. Ins. Co.* also is misplaced. No. CIV.A. 3-02-CV270JCH, 2002 WL 1000079 (D. Conn. Apr. 12, 2002). Unlike here, where the Complaint unambiguously seeks a total of $87,868.00, Compl. ¶¶ 8-9, thus satisfying the amount in controversy threshold as discussed above, in *Devit*, the court found ambiguity in the plaintiff's statement of damages in the complaint. *Id.* The court therefore considered evidence outside the pleadings. *Id.* Here, the Court need not look any further than the pleadings. *See Luo*, 625 F.3d at 775. Even if *Devit* were to apply, which is does not, it stands for the proposition that where a statute "provides no guidance as to a method of determining the amount of a punitive damages award," *id.* at *2 (internal citation omitted), "other methods of calculating damages may be

appropriate where larger awards of actual damages are involved." *Id.* (citing *Tingley Sys., Inc. v. Norse Sys., Inc.* 49 F.3d 93, 96–97 (2d Cir. 1995) (affirming the lower court's reduction of a jury's punitive damages award under [the Connecticut Unfair Trade Practice Act ("CUTPA")] from $1 million to $20,000.00 where actual damages totaled $360,500.00)). Contrary to Plaintiff's assertion, *Devit* does not require a more searching analysis by virtue of a plaintiff seeking punitive damages of a larger amount.

Finally, by its terms, the statutory scheme at issue here "provides [] guidance as to a method of determining the amount of a punitive damages award." *Id.* Specifically, Conn. Gen. Stat. § 31-72 provides that "[w]hen any employer fails to pay an employee wages . . . such employee . . . shall recover, in a civil action . . . twice the full amount of such wages." Damages under Conn. Gen. Stat. § 31-72 are expressly based on wages due to the employee. By contrast, as the court notes, the statute at issue in *Devit* provides no such guidance.[2] 2002 WL 1000079, *2. Plaintiff's reliance on *Devit* does not advance its argument.

Because Plaintiff's Complaint initially sought a total of $87,868 in damages, representing "double damages," or double Mr. Pelletier's lost wages, Compl. ¶¶ 8–9, this case met the amount in controversy requirement at the time of removal. Accordingly, the Court must "recognize[] a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," and Plaintiff's and Mr. Pelletier's stipulations that they will now not seek more than $75,000 in damages does not rebut the presumption that the $86,868 the Complaint requested was a "good faith representation of the actual amount in controversy." *Stiles*, 315 F.3d at 116. Because First Niagara removed this case before the Plaintiff and Mr.

---

[2] CUTPA provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an . . . to recover actual damages." Conn. Gen. Stat. Ann. § 42-110g(a).

9

Pelletier prepared and filed the stipulations, the "amount in controversy was satisfied at the time of removal," and Plaintiff cannot subsequently deprive the Court of jurisdiction "it properly possessed" at the time of removal. *Luo*, 625 F.3d at 776.

## C. Abstention

Plaintiff finally argues that this Court should remand this case because it should abstain from deciding what, in Plaintiff's view, are novel issues of state law in this case. Pl.'s Br. at 6–8; Pl.'s Supp. Br. Add. at 2–4. The Court disagrees.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

Abstention may be "appropriate," "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.* at 814–16. Abstention also applies where "federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," even if the issue is "not of transcendent importance." *Id.* The Supreme Court has found that, where "the state law to be applied appears to be settled" and "[n]o questions bearing on state policy are presented for decision," then that category of abstention does not apply. *Id.* at 815. Here, the applicable Connecticut law appears to be settled, making abstention inappropriate.

The Connecticut Supreme Court already has determined that Conn. Gen. Stat. § 31-72 "does not embody substantive standards to determine the amount of wages that are payable but provides penalties in order to deter employers from deferring wage payments once they have accrued," and that it is "therefore, a remedial statute rather than one creating independent substantive rights." *Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 393–94 (2016). A wage agreement between an employee and employer "is not dictated by the statutes; instead, it is the integrity of that wage agreement that is protected by the statutory provisions," "[i]n other words, the Connecticut wage statutes do not purport to define the wages due; they merely require that those wages agreed to will not be withheld for any reason." *Id.* at 394 (internal quotation marks omitted).

The interpretation of Conn. Gen. Stat. § 31-72 does not, therefore, "present[] difficult questions of state law bearing on policy problems of substantial public import," or "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 814-16. Indeed, it does not appear that this case presents any "questions bearing on state policy." *Id.* at 815.[3]

This case does not meet the requirements of an "extraordinary and narrow exception" to this Court's duty "to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813. The Court, therefore, will not remand this case in order to abstain from deciding the state issues it presents.

---

[3] Then-Assistant Director of the Wage & Workplace Standards Division's 2002 letter, discussing that Plaintiff would recognize a bonus as earned if an employee meets certain conditions, Pl.'s Supp. Br. Add. Ex. A, is of little probative value as to whether certain questions about bonuses at issue before the Court are unsettled matters of state policy. Contrary to Plaintiff's assertion, the mere fact that a court must apply a Connecticut statute to a new set of facts, standing alone, falls far short of an "exceptional circumstance[]" that would merit "[a]bdication of [the Court's] obligation to decide [this] case[]." *Colorado River*, 424 U.S. at 813.

11

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remand is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 22 day of September, 2017.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE