UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCOTT D. JACKSON, State of Connecticut, Commissioner of Labor, *Plaintiff*, <br><br> v. <br><br> FIRST NIAGARA BANK, N.A., *Defendant*. | No. 3:16-cv-01479 (VAB) |

**RULING AND ORDER ON MOTION FOR RECONSIDERATION**

Scott D. Jackson, Commissioner of the State of Connecticut Department of Labor (the "Commissioner" or "Plaintiff"), filed suit under Conn. Gen. Stat. § 31-72 to collect unpaid wages on behalf of Brian L. Pelletier, from Mr. Pelletier's former employer First Niagara Bank, N.A. ("First Niagara" or "Defendant"), in Connecticut Superior Court. ECF No. 1-1. First Niagara removed the case to this Court.

Plaintiff has moved for reconsideration of the Court's denial of Plaintiff's motion to remand the case to Connecticut Superior Court. ECF No. 35.

For the reasons that follow, the motion is **DENIED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On December 2, 2013, Mr. Pelletier allegedly filed a claim with Plaintiff, seeking assistance in obtaining unpaid wages from First Niagara. *Id.* ¶ 4. Plaintiff allegedly investigated the claim and determined that First Niagara owes Mr. Pelletier $43,934 in unpaid wages, consisting of $6,300 in "true up" commissions based on annual production, $12,634 in commissions on mortgage loans for loans that closed more than thirty days after his October 17,

1

2013, termination, and a $25,000 bonus based on Mr. Pelletier's 2012 performance. *Id.* ¶ 5. The $43,934 in unpaid wages allegedly due to Mr. Pelletier remains due and outstanding. Compl. ¶ 8. Under Conn. Gen. Stat. §31-72, Plaintiff seeks to collect double damages, for a total of $87,868, in addition to reasonable attorney's fees, costs and interest. Compl. § 9.

On August 4, 2016, Plaintiff filed this action in the Connecticut Superior Court for the Judicial District of Hartford, *see generally* Compl., ECF No. 1-1, alleging that First Niagara was an employer under Conn Gen. Stat. § 31-71a(1)). *Id.* ¶ 2. First Niagara then removed the case to this Court. ECF No. 1. Plaintiff moved to remand this case to the Connecticut Superior Court. ECF No. 19. In support of its motion to remand, Plaintiff has provided a stipulation, signed by the Attorney General for the State of Connecticut, George Jepsen, Assistant Attorney General, Philip M. Schulz, Plaintiff's counsel, Assistant Attorney General, Richard T. Sponzo, and Resa Spaziani, the Director of the Wage and Workplace Standards Division of the Connecticut Department of Labor. *See generally* Stipulation, ECF No. 19-1. The Stipulation provides that the State of Connecticut Commissioner of Labor, "will not seek more than $75,000.00 in his claims against" First Niagara. *Id.* at 1. Plaintiff has also provided a stipulation signed by Mr. Pelletier, where he agreed not to seek more than $75,000.00 from First Niagara. *See* Pl.'s Reply Ex. A at 12, ECF No. 23. The Court denied the motion. ECF No. 35.

Plaintiff has moved for reconsideration of the Court's ruling on Plaintiff's motion to remand this case to Connecticut State Court.

## II.     STANDARD OF REVIEW

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations omitted). A motion for reconsideration generally does not allow the moving party to revisit arguments that have already been presented before the court. *See Shrader*, 70 F.3d at 257 ("a motion for reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided.").

## III. DISCUSSION

Plaintiff argues that the Court's legal error is threefold: (1) *Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210 (2003) recognizes that Plaintiff is the real party in interest in an enforcement suit under § 31-72; (2) this Court should abstain from hearing this case because it presents novel questions of statutory interpretation and matters of public policy on which Connecticut courts have yet to provide guidance; and (3) "the mere allegation of a punitive damages claim . . . does not by itself render the complaint unambiguous or preclude the Court's further consideration of the punitive damages claim itself" and thus the jurisdictional amount-in-controversy threshold has not been met. *See generally* Pl.'s Br.

### A. Timeliness

As a preliminary matter, Plaintiff's request for relief is untimely. A motion for reconsideration must be filed within seven days of the filing of the order from which such relief is sought. D. Conn. L. Civ. R. 7(c)(1). Plaintiff filed his motion for reconsideration twenty-eight days after the Court's September 22, 2017, Ruling on Plaintiff's motion to remand, and is

3

therefore late. Plaintiff's pending motion makes no mention of this missed deadline and fails to demonstrate good cause for why the Court should accept Plaintiff's late filing.

"The Local Rules are not merely the hopes, dreams, or suggestions of this [C]ourt; they make up the framework within which cases are decided in this district." *Am. Lines, LLC v. CIC Ins. Co., A.V.V., S.A.*, No. 3:03-cv-1891 (JCH), 2004 WL 2381717, at *7 (D. Conn. Sept. 30, 2004). As Plaintiff's motion for reconsideration is late, it is denied. *See, e.g.*, *Brown v. Tuttle*, No. 3:13-cv-1444 (VAB), 2015 WL 4546092, at *2 (D. Conn. July 28, 2015) (denying a motion for reconsideration as untimely); *Edwards v. Arnone*, No. 3:11-cv-1537 (AVC), 2012 WL 879235, at *1 (D. Conn. Mar. 13, 2012) (same).

Even were the Court to consider Plaintiff's motion on the merits, it fails to meet the Second Circuit's strict standard for reconsideration. *See Shrader*, 70 F.3d at 257.

### B.     Real Party in Interest

Plaintiff argues that *Schoonmaker* "clearly" recognized that Plaintiff possesses an independent right of action under § 31-72 separate from the interests of Mr. Pelletier, a right that when asserted essentially extinguishes Mr. Pelletier's interest in the matter, "notwithstanding any dicta in Schoonmaker to the contrary." Pl.'s Br. at 1–2. First Niagara argues that Plaintiff raised, and the Court rejected this exact argument, and, therefore, the argument cannot serve as a basis for reconsideration. The Court agrees.

The Connecticut Supreme Court has spoken on this precise issue: whether "the plaintiffs had assigned their claims arising out of [an enforcement action under § 31-72] to the [Commissioner], thereby extinguishing their rights and interest in those claims." *Schoonmaker*, 265 Conn. at 221–22. The Connecticut Supreme Court determined that they had not.

In *Schoonmaker*, like here, the court's analysis was grounded in the "[wage claim's] specific assignment language," not the text of § 31-72, which, notably, "is silent about the effect of subsequent assignments of claims to the department . . . ." *Id.* at 221 n.20. There, like here, the court need not, and did not reach an interpretive read of the statute. *See id.* ("We, therefore, will not address the plaintiffs' claim that the assignment language on the form is superfluous and legally meaningless because they brought this action pursuant to § 31–72."). Thus, like in *Schoonmaker*, and contrary to Plaintiff's repeated assertion, the 1989 amendment to § 31-72, *see generally* 1989 Conn. Acts. 89-157 (Reg. Sess.), does not change the result.

Plaintiff glosses over the fact that the exact same language in the wage claim here was at issue in *Schoonmaker*. The wage claim expressly requires a claimant to "assign all wages and all penalties accruing . . . to the Labor Commissioner . . . to collect," Wage Claim at 2, giving rise to an "assignment for collection," but the employee "retain[s] equitable ownership of those claims, and may bring" their own "action to collect the wages owed them." *Schoonmaker*, 265 Conn. at 229. The employee therefore "retains express authority to object to, or disapprove, any proposed settlement," creating "what is essentially an agency relationship" between the employee and the Commissioner. *Id.*; *see also* Wage Claim at 2 ("I authorize the Labor Commissioner . . . to approve a proposed compromise adjustment or settlement of this claim, unless I object in writing . . . ."). Although Plaintiff asserts that "[u]nder the statute," the Commissioner is the party in interest until such time as the Commissioner provides the employee with a release to bring a private action, Spaziani Aff. ¶ 6, the statutory text does not support the assertion.[1] In fact, § 31-72 is silent on the matter.

---

[1] Ms. Spaziani's affidavit is principally made up of legal conclusions that the Court will disregard. *See, e.g.*, ("Since Conn. Gen. State § 31-72 was amended . . . the State's policy and practice with respect to the Commissioner's civil actions has been fundamentally altered."); *cf.*+

5

Mr. Pelletier completed a complaint form that creates an "assignment for collection" and, therefore, he is the real party in interest. *See Schoonmaker*, 265 Conn. at 229. There is diversity of citizenship between Plaintiff, the Commissioner of Labor, and Defendant, First Niagara, and this Court therefore has diversity jurisdiction over this case.

Plaintiff has failed to substantiate his claim of legal error and the Court therefore declines to reconsider its earlier ruling.

**C.     Abstention**

Plaintiff argues that this case "clearly" presents novel issues of statutory interpretation related to bonuses and commissions that could disrupt state efforts to develop a coherent policy on a matter of significant public concern were this Court to opine without appropriate guidance from Connecticut courts. First Niagara argues that abstention is not warranted because the Connecticut Supreme Court has provided sufficient guidance on matters related to commissions and bonuses and that reconsideration is inappropriate. The Court agrees.

Here, Plaintiff again seeks to plow ground the Court has already covered. Plaintiff alleges that First Niagara owes Mr. Pelletier $6,300 in "true up" commissions based on annual production, $12,634, in commission alleged owed to him for mortgages he made before he was terminated but that were closed more than thirty days after his termination, and a $25,000 bonus based on performance. Compl. ¶ 5, ECF No. 1-1. Whether commissions or bonuses, the "[the Court does] not write on a blank slate." *Ass'n Res., Inc. v. Wall*, 298 Conn. 145, 173 (2010).

---

*Brown-Criscuolo v. Wolfe*, No. 3:05-cv-01486DJS, 2007 WL 2439421, at *2 (D. Conn. Aug. 24, 2007) ("Legal conclusions offered by both lay and expert witnesses are inadmissible because it is not for a witness to instruct the court on the law. Indeed, conclusory witness testimony is not helpful because it does not allow the court 'to know what the true facts are' because [such testimony] is composed of legal conclusions rather than factual assertions.") (internal quotation marks and citations omitted).

6

The Connecticut Supreme Court has addressed the calculation of commissions and bonuses under the Minimum Wage Act on a number of occasions. *See, e.g.*, *Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 398 (2016) (addressing whether an at-will employment agreement providing that an employee's commissions would not be paid, unless the employer had invoiced commissionable amounts to the client prior to the employee's termination, violated the Minimum Wage Act); *Ass'n Res., Inc. v. Wall*, 298 Conn. 145, 176 (2010) (affirming the lower court's determination that the bonuses at issue there were wages as defined by § 31–71e(3) because, under the employment agreement, "they were entirely nondiscretionary, both as to whether they would be awarded, and the amount thereof"); *Ziotas v. Reardon Law Firm, P.C.*, 296 Conn. 579, 588–89 (2010) (concluding that the payment of a bonus that was contractually required and only the amount of the bonus was discretionary does not constitute wages under § 31–71a(3)); *Mytych v. May Dep't Stores Co.*, 260 Conn. 152, 160–61 (2002) (holding that the Minimum Wage Act does "not provide substantive standards as to how wages are calculated. [Its] purpose is remedial; to prevent the employer from taking advantage of the legal agreement that exists between the employer and the employee" and thus "the formula by which an employee's [commission] is calculated is determined by the agreement between the employer and the employee.").

It is ancient learning that state and federal Courts are of concurrent jurisdiction, *see Brown v. Van Bramm*, 3 U.S. (3 Dall.) 344, 345–46 (1797) ("In deciding on this exception, the Court will be governed by the law of Rhode Island, by virtue of the reference made in the thirty fourth section of the Judicial Act, to the laws of the several States, as rules of decision in trials at common law, in the Courts of the United States, where they apply."), and "the mere fact that a court must apply a Connecticut statute to a new set of facts, standing alone, falls far short of an

"exceptional circumstance[ ]" that would merit "[a]bdication of [the Court's] obligation to decide [this] case[ ]." *Jackson*, 2017 WL 4217394, at *6 n.3 (quoting *Colorado River*, 424 U.S. at 813).

Plaintiff therefore has failed to demonstrate clear legal error.

### D. Amount in Controversy

Finally, notwithstanding that fact that the Complaint plainly states that Plaintiff seeks a total of $87,868, representing "double damages," Compl. ¶¶ 8–9, Plaintiff now argues, for a second time, that claims for punitive damages, such as here, are subject to more searching scrutiny, and that the Court committed legal error in finding it may take jurisdiction over this matter under 28 U.S.C. § 1332. Plaintiff has done nothing more than rehash old arguments and the Court shall not reconsider them.

Indeed, it is well-settled that the Second Circuit "recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 116 (2d Cir. 2002). Because Plaintiff's Complaint stated an amount in controversy above $75,000 at the time the case was removed, the jurisdictional threshold here has been satisfied.

While "the courts may look to documents outside the pleadings to other evidence in the record to determine the amount in controversy" when there is a dispute as to the amount in controversy and "the pleadings are inconclusive," *Yong Qin Luo v. Mikel*, 625 F.3d 772, 775 (2d Cir. 2010), the Complaint here is not inconclusive. And, absent "legal certainty that the claim is really less than the jurisdictional amount," the Court did not in its earlier ruling, and will not now, presume Plaintiff's bad faith and remand this case. *Fallstrom v. L.K. Comstock & Co.*, No. 3:99-cv-952 (AHN), 1999 WL 608835, at *1 (D. Conn. July 13, 1999) (quoting *Saint Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 288–89 (1938)).

Plaintiff's motion is both untimely and fails to "point to controlling decisions or data that the [C]ourt overlooked" and therefore falls short of meeting the strict standard for reconsideration under *Shrader*. 70 F.3d at 257.

## IV. CONCLUSION

For the reasons discussed above, the motion for reconsideration is **DENIED**.

The Parties are directed to submit a report under Rule 26(f) of the Federal Rules of Civil Procedure by June 29, 2018 and participate in a telephonic status conference for the purpose of establishing a scheduling order on Tuesday, July 17, 2018 at 10:00 a.m.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of June, 2018.

                                             /s/ Victor A. Bolden
                                             VICTOR A. BOLDEN
                                             UNITED STATES DISTRICT JUDGE